# Southern Ry. Co., *v.* Goldstein Bros.

*Damages for Failure to Deliver Goods.*

(Decided May 10, 1906. 41 So. Rep. 173.)

*Carriers; Connecting Carriers; Duty of Initial Carriers; Bill of Lading.*—Where the bill of lading limited the carrier's liability to its own line, and required delivery to another carrier on the route to destination, if destination is not on the initial carrier's line, such initial carrier might discharge its duty by delivery to a connecting carrier designated in the bill of lad-

ing, or, if none is designated, and there are several connecting carriers, by a delivery to a proper connecting carrier on the route in the usual and customary way.

APPEAL from Birmingham City Court.

Heard before HON. CHARLES A. SENN.

Action by Goldstein Bros. against the So. Ry. Co. for failure to deliver certain goods to parties in Baltimore, delivered by plaintiffs to defendant for shipment to that point, delivery of which was not made.

The facts are sufficiently stated in the opinion of the court.

WEATHERLY & STORKELY, for appellant.—No brief came to the reporter.

GEO. HUDDLESTON, for appellees.—No brief came to the reporter.

SIMPSON, J.—This was a suit brought by the appellees (plaintiff) against the appellant (defendant) for failure to deliver certain goods which were shipped from Birmingham, Ala., to Baltimore, Md. The facts are not disputed that the goods were received by the defendant as a common carrier, at Birmingham, Ala., for which was issued what is called a "standard bill of lading," reciting the name of the consignee, "L. & L. Trimmed Hat Company, Baltimore, Md.," and "Route No.——, Baltimore Steam Packet Co." Said bill of lading states that "said carrier agrees to carry to said destination, if on its road, or otherwise to deliver to another carrier on the route to said destination," and also has the usual provision as to each carrier being only severally liable. It is admitted that the goods were delivered by the defendant to the Seaboard Air Line Railway at Atlanta, Ga.; also that defendant's line does not run to Baltimore.

The evidence does not show what the "Baltimore Steam Packet Company" is, nor between what points it carries goods, nor whether either the defendant road or the Seaboard Air Line Railway touches any point where

connection can be made with such packet company, nor does it show where the Sea Board Air Line Railway is. There was evidence tending to show that a similar package of goods was received at the dock of said Baltimore Steam Packet Company at Baltimore, but it was not shown whence said package had been shipped, nor was there any other evidence to definitely identify the goods received there. It is also shown that both the L. & L. Trimmed Hat Company and the Baltimore Steam Packet docks were destroyed by fire February 7, 1904. It is true, that under such a bill of lading, the initial carrier may discharge its duty, and relieve itself of responsibility by delivery to the connecting carrier, if one be designated in the bill, or, if none be designated and there be several, it discharges its duty by a delivery to a connecting carrier on the route "in the usual and customary way," and it is authorized to select any reasonable or usual, direct, and safe route by which to forward.—Hutchinson on Carriers (2d Ed.) § 102a; Ray's Negligence of Imposed Duties (Freight Carriers) pp. 392, 393. From the evidence, as stated, this court cannot say that there was such error in the finding of the court as to justify a reversal.

The judgment of the court is affirmed.

WEAKLEY, C. J., and TYSON and ANDERSON, JJ., concur.